# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SHERRI HUFF, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:17-cv-02007-JEO |
| BIRMINGHAM CITY SCHOOLS, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Sherri Huff alleges she was discriminated against when she was not hired as the athletic director for the Birmingham City Schools. The court[1] has before it the November 30, 2018 motion for summary judgment filed by Defendant Birmingham City Schools. (Doc. 24).[2] The motion has been fully briefed (Docs. 25, 29, 32) and is now under submission. For the reasons set forth below, the motion is due to be granted in full.

## I. PROCEDURAL HISTORY

On November 30, 2017, Plaintiff Sherri Huff filed a complaint against the Birmingham City Schools stating four causes of action. (Doc. 1). Count one

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 14).

[2] All evidentiary citations refer to the document and page number provided by CM/ECF, the court's electronic document filing system, except for citations to depositions, which refer to the page number provided on the deposition transcript.

alleges unlawful age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. (*Id*. ¶¶ 18-28). Counts two and three allege sex and race discrimination, respectively, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e, *et seq*. (*Id*. ¶¶ 29-52). Count four alleges race discrimination in violation of 42 U.S.C. § 1981. (*Id*. ¶¶ 53-64). Defendant moved for summary judgment on all four claims. (Doc. 24). In response to the motion, Plaintiff abandoned her claims under the ADEA and section 1981. (Doc. 29 at n.1). As such, only two claims remain: one for sex discrimination and one for race discrimination, both brought pursuant to Title VII.

Defendant contends summary judgment is due to be granted in its favor because (1) Plaintiff cannot establish a prima facie case of sex and/or race discrimination in the failure to hire her as athletic director; and, even if she could, (2) Defendant acted for legitimate, nondiscriminatory reasons and Plaintiff cannot show the reasons are a pretext for intentional sex and/or race discrimination. (Doc. 25). Plaintiff filed a brief in opposition to the motion (doc. 29) and Defendant filed a reply brief (doc. 32).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## III. STATEMENT OF FACTS[3]

Dr. Sherri Huff, a Caucasian female, earned a master's degree in physical education and athletic administration, as well as an Ed.S[4] in physical education and in administration. (Doc. 26-1 ("Huff Dep.") at 6-7; Doc. 26-2 ("Contri Dep.") at 57). She earned a doctorate in educational administration and leadership. (Huff Dep. at 7). Plaintiff has a long history of employment in public education in Alabama. She began her employment in 1990 as a teacher's aide and coach at Trussville Middle School. (*Id*. at 9). She then got a full-time teaching job in the Birmingham City Schools in 1991 at Washington K-8 teaching physical education and coaching basketball. (*Id*.). She resigned her position there and moved to Tarrant Elementary in 1992 as a physical education teacher and coach,[5] where she remained until 1996. (*Id*. at 10-11).

Plaintiff returned to Birmingham City Schools in 1996 as the program specialist for athletics and physical education. (*Id*. at 14). In that position, Plaintiff worked with all the athletic programs and "did scheduling, budgets, everything an athletic director does." (*Id*. at 14). In 2012, there was a reduction in force at the Birmingham City Schools and a restructuring in the administration.

---

[3] These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[4] Ed.S stands for Education specialist. (Huff Dep. at 7).

[5] Her coaching responsibilities were for middle and high school teams. (Huff Dep. at 12-13).

(*Id*. at 19-20). The athletic department and physical education department were split and the athletic department was dissolved. (*Id*.). The athletic director at the time was moved to the program specialist position and Plaintiff was moved to a teacher position, but would leave the school to perform "athletic responsibilities" for half the day at the Board of Education.[6] (*Id*. at 19-21). That arrangement continued until 2014. (*Id*. at 24).

In 2014, Alfonso "Buck" Johnson was hired as athletic director, and Plaintiff was the athletic liaison under him. (*Id*. at 24). She was then hired as the assistant athletic director in 2015. (*Id*. at 26). "All athletic director responsibilities were included in that position," including developing schedules, working on the budget, transportation, travel, and player eligibility. (*Id*. at 27). After working in that position for a year, Plaintiff returned to her position as program specialist in 2016.[7] (*Id*. at 31). As program specialist, Plaintiff did professional development for physical education teachers, worked with principals and teachers and coordinated the after school "Let's Move" program for elementary schools. (*Id*. at 33-34). Plaintiff reported to Dr. Mark Sullivan, then-chief academic officer, because the

---

[6] Larry Contri was interim athletic director at the time and requested that Plaintiff work with him in athletics for part of the day until a permanent person was hired. (Huff Dep. at 22).

[7] The program specialist position was a 12-month position and Plaintiff received higher pay. (Huff Dep. at 31).

position was on the curriculum or physical education side, not athletics. (*Id*. at 32, 34).

In late August or early September 2016, the Birmingham City Schools posted a vacancy for the position of athletic director. (Huff Dep. at 34-35). The posting and application process was all online. (*Id*. at 35-36). The posting included a job description, as well as the requirements for the job. The requirements included a bachelor's degree, with a master's degree preferred. (Doc. 26-1 at 63). It also stated "[a] minimum of five (5) years of direct experience as a middle/high public school Athletic Director required." (*Id*.). The posting was developed by the then-Operations Officer for the school system, Dr. Matthew Alexander, who was also in charge of the hiring process. (Contri Dep. at 22, 30, 48). Plaintiff applied for the position. (Huff Dep. at 36).

After the online application process, three applicants were selected to be interviewed by a panel of public school administrators, including Dr. Alexander, Dr. Sullivan, Mr. Steve Zimmerman, then-Chief of Staff, Kimberly Washington who was in Human Resources, and Dorann Tanner who was from Alabaster City Schools. (*Id*. at 32, 36-37; Contri Dep. at 22, 24). During the interview, the applicants were evaluated and scored on a collective scoring system, or tally sheet. (Contri Dep. at 22-23). Henry Pope, an African-American male, received the highest overall score and Plaintiff had the second highest score. (*Id*. at 25; Doc.

6

26-1 at 39). Only six points separated the two candidates, with Pope receiving 235 points and Plaintiff receiving 229 points. (*Id*.). The third candidate scored well below the top two candidates with 169 points. (*Id*.).

After the interviews, the tally sheet was shared with Interim Superintendent of Schools, Larry Contri. (Contri Dep. at 23-24). Contri spoke with Alexander three or four days after the interviews were held and after he reviewed the tally sheet. (*Id*. at 25). Anderson told Contri the candidates were very articulate, answered their questions, that it was a tough decision, and that the tally sheet accurately reflected the scores of the individual interviewees. (*Id*. at 26). Notwithstanding the tally sheet, however, Contri initially recommended Plaintiff for the position. (*Id*. at 27). Contri recommended her based on the recommendation of Anderson and because he knew the most about her work ethic. (*Id*. at 28, 30).

Plaintiff's name was placed on the agenda for the upcoming Board meeting as the recommendation for the new athletic director. (*Id*. at 30-31). As was customary, the preliminary agenda was circulated to the Board members before the meeting. (*Id*. at 61). Sometime after the agenda was circulated, Africa Parchman, General Counsel for the Board of Education, began receiving phone calls from members of the Board stating that Plaintiff did not meet the minimum requirements for the position. (*Id*. at 62; Doc. 26-4 ("Parchman Dep.") at 12-14). After receiving those calls, Parchman informed Contri of the minimum

7

qualification issue regarding Plaintiff. (Contri Dep. at 31). Specifically, Parchman told Contri that Plaintiff did not meet the requirement that she be an athletic director for a period of five years in a middle and/or high school. (*Id*. at 32). If he did not change the recommendation, Contri testified he would have been in violation of board policy which states "[a]pplicants must meet the minimum qualifications of the position as provided in . . . the job description for the position, [or] the posted advertisement for the position . . . . (*Id*. at 45; Doc. 26-2 at 33). Additionally, Parchman and Contri discussed the possibility of litigation if Plaintiff was recommended for the position without meeting the minimum qualifications. (Contri Dep. at 62-63).

As a result, Contri made the decision to change his recommendation from Plaintiff to Henry Pope. (*Id*. at 32-33, 43, 63). Contri met with Plaintiff and explained to her that he was removing her as his recommendation because she did not meet the minimum job requirements. (Huff Dep. at 43). She disagreed with Contri regarding her experience, but Contri told Plaintiff he was going to have to follow the advice of the legal counsel and recommend the next candidate. (*Id*. at 43-44). Pope's name was presented to the Board as the recommendation for the position of athletic director and was approved. (Contri Dep. at 63).

After the decision, Plaintiff spoke with Zimmerman, one of the members of the interview committee and then-chief of staff. (Huff Dep. at 55). Zimmerman

8

told Plaintiff that she was the first choice of the interview committee and the "number one candidate," and "that he felt like [Plaintiff] was discriminated against" because she was white.[8] (*Id*. at 55-56, 62-64, 73). Additionally, sometime after the decision and after Contri retired as Interim Superintendent, Plaintiff and Contri went to lunch.[9] (Huff Dep. at 68-69; Contri Dep at 35). Plaintiff asked Contri why she did not get the athletic director job, and Contri told Plaintiff because she was female. (Huff Dep. at 69, 71, 73). Specifically, Plaintiff testified Contri "said because you are female. They didn't want a female."[10] (*Id*. at 73).

On December 15, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging she was discriminated against because of her age, race and sex. (Doc. 1-1 at 2). The EEOC issued Plaintiff a dismissal and notice of right to sue on September 8, 2017.

---

[8] Plaintiff initially testified that Zimmerman said she did not get the position because she was female, but changed her testimony to state that Zimmerman actually said she did not get the position because she was white. (Huff Dep. at 56, 62-64, 73).

[9] Huff testified the lunch was after she filed her EEOC complaint. (Huff Dep. at 68).

[10] Plaintiff makes much of the fact that Contri does not dispute he made the statement. (Doc. 29 at 9-10). Although technically accurate, it is overstating Contri's testimony. Contri testified that he did not recall or remember the conversation and he did not remember making the statement. (Contri Dep. at 36). He did, however, testify that he was not saying that Plaintiff was not telling the truth; he simply did not remember the conversation. (*Id*. at 37). Regardless, at the summary judgment stage, the court assumes that Contri made the statement.

(Doc. 1-2 at 2-3). Plaintiff timely filed her complaint in this court on November 30, 2017. (Doc. 1).

## IV. DISCUSSION

Before discussing the merits of Plaintiff's complaint, the court must first address the nature of her claims. Unlike the usual single-motive discrimination theory, Plaintiff proceeds solely under a mixed-motive theory. (Doc. 29 at 1). As the Eleventh Circuit explained:

> Discrimination claims brought under Title VII . . . are typically categorized as either mixed-motive or single-motive claims. An employee can succeed on a mixed-motive claim by showing that illegal bias, such as bias based on sex or gender, "was a motivating factor for" an adverse employment action, "even though other factors also motivated" the action. 42 U.S.C. § 2000e–2(m); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (finding that a plaintiff can meet her burden in a § 1983 case by showing a protected characteristic was a "motivating factor" in an adverse action). In contrast, single-motive claims – which are also known as "pretext" claims - require a showing that bias was the true reason for the adverse action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251–53 (1981) (considering a single-motive, gender-based discrimination claim).

*Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (footnote omitted).

Defendant contends that Plaintiff has not properly pled a mixed motive claim. (Doc. 32 at 2). Defendant argues Plaintiff "only vaguely mentions in her complaint that [D]efendant was 'motivated in whole or in part' by race and

gender" and nothing in the factual section of the complaint "buttresse[s] this allegation." (*Id.* at n.1). The court disagrees. Plaintiff's complaint alleges the following with regard to the motivations behind the decision at issue:

> Defendant's actions in not selecting Plaintiff, a female, for Defendant's open position of Athletics Director of Birmingham City Schools, while selecting Henry Pope, a male, with lesser qualifications and working experience, was <u>motivated in whole or part, because of gender</u>.
> . . .
> Defendant's actions in not selecting Plaintiff, a person of European ancestry, for Defendant's open position of Athletic Director of Birmingham City Schools, while selecting Henry Pope, a person of African ancestry, with lesser qualifications and working experience, was <u>motivated in whole or in part, because of race</u>.

(Doc. 1 ¶¶ 38, 50) (emphasis added). The language in these two paragraphs is clearly sufficient to put Defendant on notice that Plaintiff is asserting mixed-motive claims.[11]

The court, therefore, now moves to the merits of this mixed-motive case. Plaintiff contends that sex and/or race was a motivating factor in the decision at issue, even though other legal factors may have also motivated the action. 42 U.S.C. § 2000e-2(m); *see also Quigg,* 814 F.3d at 1235. Defendant utilizes the

---

[11] Additionally, the court notes that Defendant's answer addresses the mixed-motive theory in its Fifth Affirmative Defense which states, in pertinent part, that "even if Plaintiff could prove discriminatory or unlawful conduct by Defendant . . . Defendant would have made the same decision and taken the same actions without regard to any alleged discriminatory or unlawful motive." (Doc. 10 ¶ 8). The "same decision defense" is used by Defendants to counter a mixed-motive discrimination claim. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989).

traditional, and well known, *McDonnell Douglas*[12] burden-shifting framework for evaluating the discrimination claims presented by Plaintiff. (Doc. 25 at 8-13, 14-22). That approach, however, is not appropriate for examining mixed motive claims. *Quigg*, 814 F.3d at 1239. Instead, the Eleventh Circuit instructs that under a mixed-motive theory a plaintiff must provide "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was a motivating factor for the defendant's adverse employment action." *Id*. at 1239. "In other words, the court must determine whether the plaintiff has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that her protected characteristic was a motivating factor for an adverse employment decision." *Id*. (internal alterations, quotations and citations omitted). Such evidence may be direct or circumstantial. *Id*. at 1235.

At its core, Plaintiff's case boils down to two comments. For her claim of sex discrimination, she relies on the comment of Contri that she was not recommended because the Board did not want a female in the position. Plaintiff contends this statement is direct evidence of sex discrimination. (Doc. 29 at 9-12).

---

[12] *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973)

For her claim of race discrimination, she relies on the statement of Zimmerman that she was not recommended because she was white.[13] (*Id*. at 12-13).

Plaintiff contends that Contri's statement that "they didn't want a female" in response to her inquiry why she did not get the position of athletic director is direct evidence[14] of sex discrimination. She argues that, based on this statement, a reasonable jury could conclude that her sex was a motivating factor in the decision. As such, regardless of the fact that Plaintiff did not meet the posted minimum qualification of five years as a high school or middle school athletic director, Plaintiff contends the statement is evidence that sex was a motivating factor in the

---

[13] Plaintiff spends the vast majority of her argument on the statement made by Contri and the inferences Plaintiff contends a reasonable jury could draw from the statement. She lumps race and gender together throughout her argument, (doc. 29 at 12), but Contri's statement has nothing to do with race. It is Zimmerman's statement that brings race into the picture. (*See* Huff Dep. at 55, 62-63, 73, 79-80 & 96-97).

[14] The Eleventh Circuit defines direct evidence of discrimination as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Wilson v. B/E Aerospace Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)). Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997). As our precedent illustrates, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of" some impermissible factor constitute direct evidence of discrimination. *Rojas v. Florida*, 285 F.3d 1339, 1342 n 2 (11th Cir. 2002) (citations and quotations omitted); *see Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence. *See Burrell*, 125 F.3d at 1393.

decision. Defendant argues that the statement is based on inadmissible hearsay and, as such, the court cannot consider it.[15] (Doc. 32 at 5-6).

Before the court can analyze the statement, the court first acknowledges the unique factual circumstances presented by this case. Here, there are essentially two decisionmakers. Alabama law "mandates a two-step employment process, with a division of functions between the superintendent and the board of education. The superintendent is exclusively responsible for making personnel recommendations, and the board of education is exclusively responsible for acting upon those recommendations. Neither entity can make a personnel decision without the approval of another." *Hamilton v. Montgomery Cnty. Bd. of Educ.*, 122 F. Supp. 2d 1273, 1285 (M.D. Ala. 2000). As such, Contri and the Board were both decisionmakers in the decision at issue. Contri made the recommendation decision and the Board made the decision to accept his recommendation. Both decisions were necessary parts of the ultimate hiring decision at issue.

Contri's statement is not evidence of his own intent for removing her name as the recommended candidate for athletic director. The record is clear that Plaintiff was Contri's choice and he removed her name only after a conversation with Parchman. Instead, Contri's statement attributes the discriminatory intent to

---

[15] Defendant does not formally move to strike the statement at issue. That being said, the court views their argument regarding the statement as a motion to strike. (Doc. 32 at 5-6).

14

"they," presumably unknown members of the Board. The question for the court is whether the statement is admissible.

There can be no dispute that the statement is hearsay - it is an out of court statement offered for the truth of the matter asserted. As such, it is inadmissible under Rule 802 unless it falls into one of the exceptions delineated in Rule 801. Under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . ." Fed. R. Evid. 801(d)(2)(D). Regardless of whether Contri was an agent of the Board, this exception to the hearsay rule does not apply to the facts presented here because Huff testified that Contri made the statement during their lunch after he retired as superintendent. (Huff Dep. at 68). The statement, therefore, was not made while the employment relationship existed, as required by the rule. As such, the statement does not fall into the hearsay exception of Rule 801(d)(2)(D) and the court must, therefore, disregard it in its analysis.[16]

---

[16] The court also notes that the statement lacks any foundation regarding Contri's personal knowledge of the intent of the Board members. *See* Fed. R. Evid. 602 ("[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). If the statement fell within the Rule 801(d)(2)(D) exception, Rule 602 would not be in play, *see Lexington Ins. Co v. Western Penn. Hosp.*, 423 F. 3d 318, 330 n.7 (3d Cir. 2005); *Brookover v. Mary Hitchcock Memorial Hosp.*, 893 F.2d 411, 415–418 (1st Cir. 1990); *Mahlandt v. Wild Canid Survival & Research Center*, Inc., 588 F.2d 626, 630–31 (8th Cir. 1978); *Holiness v. Moore-Handley, Inc.*, 114 F. Supp. 2d 1176, 1183 n.7 (N.D. Ala. 1999), but because it does not, the court notes this additional evidentiary problem with the statement. Personal knowledge goes beyond a person's beliefs or speculations. *Gen.*

15

The statement by Zimmerman is even more tenuous and suffers the same fate. Although Zimmerman was a member of the interview committee, Zimmerman was not a decisionmaker. Statements by nondecisionmakers do not raise an inference of discrimination. *See Rowell v. BellSouth Corp.,* 433 F.3d 794, 802 (11th Cir. 2005); *Steger v. General Electric Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003) ("statements made by nondecisionmakers or statements made by decisionmakers unrelated to the decisional process" do not demonstrate discriminatory intent); *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999). Moreover, there is absolutely no evidence in the record that Zimmerman had any personal knowledge regarding the adverse decision at issue. *See* Fed.R. Evid. 602. Instead, the statement only reveals Zimmerman's personal belief. The court, therefore, must disregard this statement in its analysis.

Without the statements by Contri and Zimmerman, there is no evidence of discriminatory motive on the part of Defendant. Instead, the evidence shows that Defendant acted for a legitimate, nondiscriminatory reason when Contri removed her name as his recommendation for athletic director – Plaintiff did not meet the minimum posted qualifications for the position. Plaintiff admits that she does not meet the requirement that she have five years of experience as a middle school or

---

*Longshore v. Pate Stevedore*, 41 F.3d 668 (11th Cir. 1994) (holding that a party's belief does not satisfy the personal knowledge requirement because "[b]elief, no matter how sincere, is not equivalent to personal knowledge"). There is simply no evidence in the record to provide a rational basis for the statement, other than Contri's own speculation and beliefs.

high school athletic director. (Doc. 29 at 12-13). She argues, however, that her qualifications on the other requirements are superior to Pope's qualifications. (*Id.* at 13-15). This argument misses the mark. Defendant does not dispute or question Plaintiff's education or employment history, nor does Defendant argue that Pope's qualifications are in any way superior to Plaintiff's. Instead, Defendant maintains that Pope met all the minimum posted requirements for the position while Plaintiff did not.

Simply put, there is no evidence before the court that sex and/or race was a motivating factor in the adverse decision. Defendant, therefore, is entitled to summary judgment on Plaintiff's claims of discrimination under Title VII.

## V. CONCLUSION

For the foregoing reasons, the motion for summary judgment (doc. 24) filed by Defendant Birmingham City Schools is **GRANTED**. A separate order will be entered.

**DATED**, this 8th day of February, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge